IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| GREGORY JOHNSON | : | CIVIL ACTION |
|---|---|---|
| v. | : | No. 19-1953 |
| FARM JOURNAL, INC. | : | |

# MEMORANDUM

**Juan R. Sánchez, C.J.**                                                                                              **August 1, 2019**

      Plaintiff Gregory Johnson seeks an advancement of litigation expenses from his former employer, Defendant Farm Journal, Inc., for the defense of a lawsuit it filed against him in the Western District of Missouri (the Underlying Action). The Underlying Action alleges Johnson, inter alia, stole trade secrets, wrongly converted a Twitter account bearing his name, and breached his fiduciary duty. Johnson has moved for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. In response, Farm Journal moved to transfer venue pursuant to 28 U.S.C. § 1404(a) to the Western District of Missouri where the Underlying Action is currently pending, or, in the alternative, to dismiss Johnson's advancement claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Johnson's motion for a preliminary injunction will be denied and Farm Journal's motion will be granted insofar as the above-captioned case shall be transferred to the Western District of Missouri.

## BACKGROUND

      Farm Journal is "the nation's leading agricultural media company" and has been in business for more than 140 years. Farm Journal is a Pennsylvania corporation and is governed by its Amended and Restated Articles of Incorporation (the Articles) and Amended and Restated Bylaws (the Bylaws) in accordance with the Pennsylvania Business Corporation Law (BCL). The Articles were enacted and filed with the Pennsylvania Department of State on June 30, 1994. *See* Decl. of

James M. Heiser ¶ 3, June 3, 2019. The Bylaws were enacted at an unknown later date as a result of a merger, in which Farm Journal was the surviving entity.[1] *See* Decl. of Jeffrey Pence Ex. A, at 1, May 20, 2019 (labeling the Bylaws "Exhibit C to Agreement and Plan of Merger," but not providing any identifying information regarding the merger).

To receive advancement under both governing documents, the person seeking advancement must be entitled to indemnification. Farm Journal's Articles and Bylaws both contain provisions regarding indemnification and advancement, but neither governing document cross-references the other.

With regard to indemnification, Farm Journal's Articles provide:

> *[e]ach person who was or is made a party* or is threatened to be made a party to or is involved in any action, *suit or proceeding*, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), *by reason of the fact that he or she*, . . . , *is or was a director, officer or employee of the Corporation* . . . whether the basis of such proceeding is alleged action *in an official capacity* . . . or *in any other capacity* . . . , *shall be indemnified and held harmless* by [Farm Journal] *to the fullest extent authorized by the Pennsylvania Business Corporation Law* . . . against all expense, liability and loss . . . reasonably incurred or suffered by such person in connection therewith and *such indemnification shall continue as to a person who has ceased to be a director, officer, employee or agent* . . . .

Compl. Ex. A, at 2 (emphasis added). The indemnification right set forth in the Articles also includes a right to advancement, stating:

> [t]he right to indemnification conferred in this Section B shall *be a contract right* and shall include *the right to be paid by the Corporation* the expenses incurred in defending any such proceeding *in advance of its final disposition*; provided[,] however, that if the Pennsylvania Business Corporation Law requires, the payment of such expenses *incurred by a director or officer in his or her capacity as a*

---

[1] As noted by merger certificates Johnson attached to his preliminary injunction motion, which the Court may also consider in the motion to dismiss context because they are publicly available documents, *see Humphreys v. McCabe, Weisberg & Conway, P.C.*, No. 15-4355, 2016 WL 9024599, at *3 (E.D. Pa. Feb. 4, 2016) (noting a court may consider "matters of public record in deciding a motion to dismiss"), Farm Journal underwent two mergers, the first with MSFJ, LLC, in 2007 and the second with Commodity Update LLC in 2014. *See* Decl. of James Heiser, Ex. B, at 1-2, May 13, 2019. In both instances, Farm Journal was the surviving entity. *Id.* at 7, 11.

2

*director or officer* (and not in any other capacity in which service was or is rendered by such person while a director or officer . . . ) *in advance of the final disposition* of a proceeding, *shall be made only upon delivery* to the Corporation of an *undertaking* by or on behalf of such director or officer, to repay all amounts if it shall ultimately be determined that such director or officer is not entitled to be indemnified under this Section B or otherwise.

*Id.* at 2-3 (italic emphasis added).

Under Section 7.01(a) of the Bylaws, subject to certain exclusions not at issue here, Farm Journal "shall indemnify an indemnified representative against any liability incurred in connection with any proceeding in which the indemnified representative may be involved as a party or otherwise by reason of the fact that such person is or was serving in an indemnified capacity . . . ."[2] Decl. of Jeffrey Pence Ex. A, at 17. Section 7.01(d)(2) defines an "indemnified representative" as:

> any and all directors of the corporation and *any other person designated as an indemnified representative by the board of directors of the corporation* (which may, but may not, include any person serving at the request of the corporation, as a director, officer, *employee*, agent, fiduciary, or trustee of any other corporation . . . ).

*Id.* at 18 (emphasis added). With regard to advancement, Section 7.03 provides that Farm Journal:

> *shall pay* the expenses (including attorneys' fees and disbursements) incurred in good faith *by an indemnified representative in advance of the final disposition of a proceeding described in Section 7.01* . . . upon receipt of an undertaking by or on behalf of the indemnified representative to repay the amount if it is ultimately determined . . . that such person is not entitled to be indemnified . . . .

*Id.* (emphasis added).

---

[2] While the Bylaws were not attached to the Complaint or Johnson's preliminary injunction motion, the Court may nevertheless consider them in deciding a Farm Journal's motion to dismiss as they are integral to Johnson's claim. Despite Johnson relying solely on the Articles for his advancement claim, this claim is premised on Farm Journal's corporate governance, of which the Bylaws are an integral part. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("[D]ocument[s] integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." (internal quotation omitted)).

3

As an agricultural media company, Farm Journal publishes a trade publication known as *The Packer*. From December 2015 through July 2018, Johnson was an employee of Farm Journal and an editor of *The Packer*. In July 2018, Johnson left Farm Journal for employment with Blue Book Services, Inc., a credit and marketing information agency. On February 8, 2019, Farm Journal filed the Underlying Action against Johnson and Blue Book Services, alleging Johnson (1) "surreptitiously copied more than 11,000 files from Farm Journal's internal computer network to a personal 'DropBox' account," Compl. ¶ 13; (2) attached a USB storage device to his Farm Journal laptop and retrieved industry contact and source lists, *see id.* ¶ 14; and (3) wrongfully converted a Twitter account bearing his name with 2,500 followers, *see id.* ¶ 17-18. Johnson retained Chapman and Cutler LLP to represent him in the Underlying Action.

On March 28, 2019, Johnson demanded that Farm Journal advance the actual and reasonable legal expenses he will incur in connection with his defense of the Underlying Action pursuant to the Articles. Farm Journal denied Johnson's demand for advancement stating the advancement provisions of the Articles do not apply and he is not entitled to advancement. Following Farm Journal's denial of his advancement claim, Johnson filed the instant action on May 6, 2019. On May 13, 2019, Johnson moved for a preliminary injunction. On May 20, 2019, Farm Journal moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The motions are now ripe for disposition.

**DISCUSSION**

    **A.    Preliminary Injunction Motion**

The Court first turns to Johnson's motion for a preliminary injunction. A plaintiff seeking a preliminary injunction must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities

tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council Inc.*, 555 U.S. 7, 20 (2008). A court may not grant injunctive relief, "regardless of what the equities require," unless the plaintiff establishes both a likelihood of success and irreparable harm. *See Adams v. Freedom Forge Corp.*, 204 F.3d 475, 486 (3d Cir. 2000). The plaintiff's already difficult burden is further heightened in cases where, as here, the plaintiff is asking the Court to order the defendant to affirmatively act. *See Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008) ("[W]here the relief ordered by the preliminary injunction is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction."). If a plaintiff establishes all four factors, a district court has the discretion to grant a preliminary injunction only if all four factors taken together balance in favor of granting the relief. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

The Court must first determine whether Johnson is likely to succeed on the merits of his advancement claim. To demonstrate a likelihood of success on the merits, the movant need only prove a "prima facie case," not a "certainty" he will win. *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001). The plaintiff must show a "reasonable probability" of success. *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017) (quoting *Punnett v. Carter*, 621 F.2d 578, 583 (3d Cir. 1980)).

The threshold issue before the Court is whether Johnson's advancement claim is governed by the Articles or the Bylaws. Under Pennsylvania law, restrictions on advancement and indemnification rights are typically governed by a corporation's bylaws. *See* 15 Pa. Cons. Stat. § 1741 ("*Unless otherwise restricted in its bylaws*, a business corporation shall have power to indemnify any person . . . ." (emphasis added)); *id.* § 1745 ("*Except as otherwise provided in the*

5

*bylaws*, advancement of expenses shall be authorized by the board of directors." (emphasis added)). However, under the BCL, a corporation's articles supersede any conflicting or inconsistent bylaws. *See* 15 Pa. Cons. Stat. § 1504(a) ("The bylaws may contain any provisions for managing the business and regulating the affairs of the corporation *not inconsistent* with law or the articles." (emphasis added)). Thus, if a bylaw is in conflict with the corporation's articles, the articles control. *See High River Ltd. P'ship v. Mylan Labs, Inc.*, 383 F. Supp. 2d 660, 665 (M.D. Pa. 2006) ("The BCL allows the court to review corporate actions and to invalidate or enjoin enforcement of bylaws that . . . conflict with specific statutory requirements").

Johnson contends the Articles govern his claim and provide a blanket mandatory right of advancement and entitlement to indemnification for employees because the relevant section uses the word "shall." Johnson further asserts that, even if the Bylaws apply, the two governing documents conflict and the Articles would govern. By contrast, Farm Journal asserts the Bylaws and Articles do not conflict, and therefore, pursuant to § 1745 of the BCL, the Bylaws govern Johnson's claim and his right to advancement and indemnification is conditioned on Farm Journal's Board of Director's designating him an "indemnified representative." To determine the likelihood of Johnson's success on the merits, the Court must first determine which governing document likely applies to Johnson's advancement claim.

Because Pennsylvania authority regarding the interpretation of indemnification and advancement provisions under the BCL is lacking, the Court turns to Delaware authority to guide its analysis. *See Neal v. Neumann Med. Ctr.*, 667 A. 2d 479, 482 (Pa. Commw. Ct. 1995) (looking to Delaware law where there was no "no decision by a Court of this Commonwealth interpreting the precise [corporate law] issue . . . "). The case of *Xu Hong Bin v. Heckmann Corp*, No. 4802-CC, 2010 WL 187018, at *1 (Del. Ch. Jan. 8, 2010), is instructive. In *Xu Hong Bin*, Xu, a former

director of Heckmann, the defendant-corporation, sought an advancement of legal costs stemming from his defense of several claims Heckmann had brought against him. *See id.* at 1. At the summary judgment stage, one issue before the Delaware Court of Chancery was whether Heckmann had the ability to place reasonable conditions on Xu's right to advancement through its bylaws, even though the power to condition the advancement right was not set forth in its articles of incorporation. *See id.* Specifically, Heckmann's articles and bylaws provided advancement and indemnification rights for directors; however, its bylaws also provided that the right to advancement could be conditioned "upon such terms and conditions, if any, as [Heckmann] deems appropriate." *Id.* at \*3 (emphasis omitted). Although the bylaws contained additional restrictions on the right to advancement, the simultaneously enacted governing documents did not cross-reference each other. *Id.* at \*4.

Xu argued Heckmann could not place conditions on his right to advancement because the bylaws provided restrictions not set forth in the articles. *See id.* \*3 & n.15. Therefore, the articles and bylaws were in direct conflict, rendering the more restrictive bylaw provision invalid under 8 Del. C. § 109(b), which, like the BCL, provides that bylaw provisions may not be inconsistent with article provisions. *See id.* The Delaware Court of Chancery rejected Xu's argument, finding nothing precluded Heckmann from placing conditions on Xu's right to advancement in its bylaws. The court remarked that (1) there was "nothing inherently contradictory in recognizing that directors have advancement rights while at the same time recognizing the corporation's ability to set reasonable terms and conditions for the payment of expense"; and (2) the articles and bylaws were enacted simultaneously, which evidenced an intent to have the governing documents be

7

consistent.[3] *Id.* at *4. The court concluded that Xu had the right to advancement, but Heckmann could place reasonable conditions on Xu's right based on the language in the bylaws without the two governing documents conflicting and invalidating the bylaw provision. *Id.*

A similar general scenario is present here. Specifically, the Articles provide that "a director, officer or employee of [Farm Journal]" shall have the right to indemnity and advancement, Compl. Ex. A, at 2, whereas the Bylaws provide that Farm Journal "shall indemnify an indemnified representative," and require employees to receive a designation from Farm Journal's Board of Directors prior to being entitled to advancement or indemnification, Decl. of Jeffrey Pence Ex. A, at 17. Consequently, while both governing documents provide indemnification and advancement rights to employees, the later-enacted Bylaws expound on the definition of "employee" and condition indemnification on designation as an indemnified representative by Farm Journal's Board of Directors. Like the *Xu Hong Bin* plaintiff, Johnson asks the Court to find the Articles and Bylaws inconsistent and apply only the indemnification and advancement rights as set forth in the Articles. At this stage, the Court agrees with Johnson that there is a reasonable likelihood the Articles and Bylaws conflict, notwithstanding *Xu Hong Bin*.

The instant case is distinguishable from *Xu Hong Bin* in two aspects. First, unlike *Xu Hong Bin*, where Heckmann reserved the right to place reasonable conditions which did not abrogate or reduce Xu's ability receive advancement, *see* 2010 WL 187018, at *4, here, the Bylaws place a *condition precedent* on Johnson's right to receive advancement payments, i.e., he does not have a right to advancement unless he is designated an "indemnified representative" by Farm Journal's Board of Directors. Because the Articles provide a blanket right to advancement and indemnity

---

[3] The court in *Xu Hong Bin* also based its decision on the fact that the bylaws were in effect when Xu became a director. In this case, given that it is unclear when the Bylaws took effect, the Court will not consider this factor.

and the Bylaws place an inconsistent condition precedent on that advancement right by requiring a designation, there is a reasonable likelihood the Articles and Bylaws conflict. *See also Airgas, Inc. v. Air Prods. & Chems., Inc*., 8 A.3d 1182 (Del. 2010) (finding a bylaw regarding terms for the board of directors inconsistent with a corporation's charter where it served to "frustrate the plan and purpose behind the provision for [the corporation's] staggered terms and [was] incompatible with the pertinent language of the statute and the [charter].").

Second, unlike *Xu Hong Bin*, the Articles and Bylaws were not enacted simultaneously and there is no indication that the governing documents were intended to be consistent. In *Xu Hong Bin*, the court noted that Heckmann's articles and bylaws were enacted simultaneously and found that "every effort should be made to reconcile the provisions of simultaneously enacted founding documents." 2010 WL 187018, at *4. By contrast, Farm Journal's Articles were enacted in 1994 and the Bylaws were enacted at an unknown later date. Therefore, there is no presumption that the Articles and Bylaws were intended to be consistent.

Moreover, from the limited record before the Court, there is no indication that Farm Journal ever intended for the Articles and Bylaws to be consistent as neither governing document cross-references the other. This is also highlighted by the fact that the Bylaws appear to have been enacted as a result of one of Farm Journal's two mergers subsequent to the enactment of the Articles. In other words, the Bylaws appear to have been enacted through a process that may have fundamentally changed the corporate governance and structure of Farm Journal. In sum, because it appears the Articles and Bylaws conflict, the Court will apply the Articles' indemnification and advancement provisions.

Under the Articles, Johnson is entitled to indemnification and advancement if he is a party to a "suit or proceeding . . . by reason of the fact that he . . . is or was a[n] . . . employee of [Farm

Journal] . . . whether the basis of such proceeding is alleged action in an official capacity . . . or in any other capacity." Compl. Ex. A, at 2. The parties dispute whether Johnson is a party to the Underlying Action "by reason of the fact" that he was an employee of Farm Journal.

Pennsylvania courts interpreting "by reason of the fact" language look to see whether the employee's conduct was committed within the scope of his or her employment. *See Julius v. RMA Enters. Inc.*, No. 139 MDA 2013, 2013 WL 11251564, *5-6 (Pa. Super. Oct. 22, 2013). The case of *Souder v. Rite Aid Corp.*, 911 A.2d 506 (Pa. Super. Ct. 2006), *appeal denied*, 932 A.2d 76 (Pa. 2007), which interpreted the same language under Delaware law, helps guide the Court's analysis. In *Souder*, Robert Souder brought suit seeking an advancement of legal costs from his previous employer, Rite Aid, for claims Rite Aid had brought against him. In the underlying litigation, Rite Aid alleged Souder received money from Rite Aid he was not entitled to under both an executive incentive plan and a backdated severance agreement. *Id.* at 507. Souder received the allegedly improper compensation as a result of a conspiracy perpetuated by Rite Aid's chairman and chief executive officer, Martin L. Grass, and its former chief financial officer, Franklyn M. Bergonzi. Through the conspiracy, Grass and Bergonzi fraudulently created backdated severance agreements—including the one Souder provided to Rite Aid, induced Rite Aid's board of directors into approving a long-term incentive plan that overpaid certain executives, and prepared and filed financial statements with the Securities and Exchange Commission that falsely inflated Rite Aid's reported earnings by approximately $500 million in each of the previous three years. *Id.* at 507-08.

The *Souder* court found that Souder was not a party to the underlying litigation "by reason of" his employment with Rite Aid because his conduct did not involve "the performance of his corporate duties." *Id.* The *Souder* court determined "[Souder] was not using his entrusted corporate

powers and was not performing his employment responsibilities when he handed [Rite Aid] the fraudulent document for severance pay." *Id.* at 511. In contrast, the *Souder* court noted that Grass and Bergonzi would be parties to litigation against them by Rite Aid "by reason of" their employment because they were performing their official functions when they created the fraudulent documents and manipulated corporate records using their "entrusted corporate powers." *Id.*

Johnson contends he is a party to the Underlying Action "by reason of" his employment with Farm Journal because his alleged misconduct involved the performance of his corporate powers, like Grass and Bergonzi. Farm Journal takes the contrary position that Johnson acted for his own personal gain and not within the scope of his employment responsibilities, like Souder. Based on the record before the Court, there is a reasonable likelihood that Johnson's alleged misconduct involved the "performance of his corporate powers."

The Underlying Action alleges Johnson (1) "surreptitiously copied more than 11,000 files from Farm Journal's internal computer network to a personal 'DropBox' account," Compl. ¶ 13; (2) attached a USB storage device to his Farm Journal laptop and retrieved industry contact and source lists, *see id.* ¶ 14; and (3) wrongfully converted a Twitter account bearing his name with 2,500 followers*, see id.* ¶ 17-18. Like Grass and Bergonzi in *Souder*, Johnson could only undertake these actions using his corporate powers, i.e., accessing Farm Journal's internal computer network, using the laptop Farm Journal provided him, and taking a Twitter account that was allegedly the property of Farm Journal. Thus, at this stage, it appears that Johnson's alleged misconduct was taken "by reason of the fact" that he was an employee of Farm Journal and he used "his corporate

powers" to engage in the alleged misconduct.[4] *See Brown v. LiveOps, Inc.*, 903 A.2d 324, 328-29 (Del. Ch. 2006) (finding a former director was entitled to indemnification because the claims against him were "inextricably intertwined with [Brown's] position" and his "corporate powers were used, and were necessary, for the commission of the alleged misconduct."). As a result, because it appears the Articles govern Johnson's advancement claim and the allegations made in the Underlying Action arise "by reason of" Johnson's employment with Farm Journal, Johnson has demonstrated a reasonable likelihood of success on the merits.

Next, the Court turns to whether Johnson has demonstrated irreparable harm. Neither a mere risk of future harm nor a compensable, temporary loss of money constitutes irreparable harm. *Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994) ("[I]t seems clear that the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." (quoting *Sampson v. Murray*, 415 U.S. 61 (1974)). To succeed, Johnson must demonstrate "a significant risk that he . . . will experience harm that cannot adequately be compensated after the fact by monetary damages." *Frank's GMC Truck Ctr., Inc. v. General Motors Corp.*, 847 F.2d 100, 102–03 (3d Cir. 1988). As noted, because granting Johnson's preliminary injunction would require Farm Journal to take affirmative action, Johnson bears a "heightened" burden to demonstrate irreparable harm. *See Bennington Foods LLC*, 528 F.3d at 179.

Johnson argues he will be irreparably harmed if a preliminary injunction is not granted because he "lacks the resources to pay his expenses through trial if forced to pay these expenses." Decl. of Gregory Johnson ¶ 5-6. This argument, however, is unpersuasive because, as Johnson

---

[4] Farm Journal also argues Johnson is not entitled to advancement because he has not provided an undertaking as required by § 1745 of the BCL. This argument, however, does not apply to whether he is entitled to advancement under the Articles or Bylaws. Rather, it goes to the manner in which Johnson would receive advance, if entitled.

12

states, (1) his current employer Blue Book "will bear some of his expenses if forced to do so," *id.*, and (2) there is no indication that, absent a grant of his motion for a preliminary injunction, Chapman and Cutler would discontinue its representation of Johnson while this case remains pending. Johnson has therefore failed to demonstrate that he would be irreparably harmed if an injunction is not granted.[5] *See, e.g.*, *Alenyikov v. Goldman Sachs Grp., Inc.*, 2012 WL 6603397, at *12-14 (D.N.J. 2012) (finding plaintiff failed to demonstrate irreparable harm when seeking advancement from his former employer to defend an underlying criminal action where there was no evidence the firm representing him in the underlying action would cease its representation or refuse representation absent a determination of his indemnity and advancement rights).

Because the Court finds that Johnson has failed to demonstrate irreparable harm, the Court does not address the balance of equities or whether granting an injunction is in the public interest. Accordingly, Johnson's motion for a preliminary injunction is denied.

B.     **Motion to Dismiss**

The Court next turns to Farm Journal's motion to dismiss. To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim

---

[5] Johnson also argues he will be irreparably harmed because "his entire right to advancement would be defeated without immediate relief." Mot. for Prelim. Inj. 12. This argument is unpersuasive. Accepting Johnson's interpretation of irreparable harm would result in a per se finding of irreparable harm for any preliminary injunction motion seeking advancement. This interpretation is in plain conflict with the "heightened" irreparable harm a plaintiff must demonstrate to obtain a preliminary injunction altering the status quo. *Bennington Foods LLC*, 528 F.3d at 179 (noting plaintiff's seeking a preliminary injunction that "alter[s] the status quo" must "meet a higher standard of showing irreparable harm"). Further, with no indication that the Underlying Action will be resolved *in his favor* prior to the disposition of the "summary proceeding," Resp. in Opp'n to Mot. to Transfer 6, there is no compelling reason in the record demonstrating that denial of Johnson's preliminary injunction would amount to a denial of his right to advancement.

is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the plausibility standard "is not akin to a 'probability requirement,'" the complaint must support "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Having found a reasonable likelihood of success under the more stringent Rule 65 preliminary injunction standard, the Court finds that Johnson has sufficiently pleaded his advancement claim to survive dismissal for failure to state a claim. Farm Journal's motion is denied to the extent it seeks to dismiss the instant action for failure to state a claim.

C. **Motion to Transfer**

Last, Farm Journal moves to transfer this case to the Western District of Missouri pursuant to 28 U.S.C. § 1404. Section 1404(a) authorizes a district court, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . [to] transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[6] In deciding a § 1404(a) transfer motion, a district court must evaluate various private

---

[6] Section 1404(a) governs transfer motions "where both the original and the requested venue are proper." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). Johnson argues the Court should not consider Farm Journal's motion to transfer because it has not shown that venue is proper in the Western District of Missouri for three reasons. First, Johnson asserts there is a "real question" as to whether personal jurisdiction exists over Farm Journal in the Western District of Missouri. Rep. in Opp'n to Mot. to Transfer 6. The Court finds this argument meritless because, as Farm Journal concedes, it purposefully availed itself of the Western District of Missouri by filing the Underlying Action and this action arises out of and relates to Farm Journal's filing of the Underlying Action. *See* Reply in Supp. of Mot. to Transfer 3 ("Farm Journal purposefully availed itself to that forum when it filed the Underlying Action."). As a result, the Western District of Missouri would exercise specific personal jurisdiction over Farm Journal. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) (finding personal jurisdiction exists when the suit "aris[es] out of or relat[es] to the defendant's contacts with the forum." (emphasis omitted) (quoting *Daimler*, 571 U.S. at 127))).

Second, Johnson alternatively argues that, if personal jurisdiction exists, venue is not proper pursuant to 28 U.S.C. § 1391. Under § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial

and public interests protected by the statute to determine "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879 (citation omitted). The private interests to be balanced include:

> the plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses; . . . the location of books and records[;] [and] all other practical problems that make trial of a case easy, expeditious and inexpensive.

*In re Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017) (internal citations and quotation marks omitted). The public interests include "the enforceability of the judgment; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; . . . the familiarity of the trial judge with the applicable state law in diversity cases"; and considerations of judicial economy. *Id.* (citations and internal quotation marks omitted). As the party seeking transfer, Farm Journal bears the burden of showing that, on balance, the foregoing private and public interests weigh in favor of transfer. *Jumara*, 55 F.3d at 879 (citation omitted).

As to the private interests, only the first factor—Johnson's forum preference—weighs clearly against transfer, as Johnson prefers to litigate in this District, where Farm Journal's corporate headquarters is located. Johnson's choice of forum is entitled to significant weight in

---

part of property that is the subject of the action is situated." In this case, a substantial part of the events giving rise to Johnson's claim occurred in the Western District of Missouri as this is where Farm Journal filed the Underlying Action, i.e., where his purported right to advancement vested. Further, Farm Journal is deemed to reside in the Western District of Missouri as it is subject to specific personal jurisdiction for this action. *See* 28 U.S.C. § 1391(c)(2) (stating, for purposes of the venue statute, a corporation is "deemed to reside . . . in any judicial district in which [it] is subject to the court's personal jurisdiction with respect to the civil action in question.").

Third, to the extent Johnson argues that Pennsylvania is the proper venue as it is the location where he demanded advancement and Farm Journal denied his demand, this argument is unpersuasive because "[v]enue does not have to be the 'best forum' for the action, as multiple districts could be proper." *See MacKay v. Donovan*, 747 F. Supp 2d. 496, 502 (E.D. Pa. 2010).

15

the § 1404(a) analysis, and "should not be lightly disturbed." *Id.* (citation omitted); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

The second factor—Farm Journal's forum preference—weighs in favor of transfer, as Farm Journal prefers to litigate in the Western District of Missouri, where the Underlying Action is currently proceeding, and where Johnson resides. Farm Journal's forum preference, however, is entitled to less weight than Johnson's in the transfer analysis. *See Infinity Comput. Prods., Inc. v. Toshiba Am. Bus. Sols., Inc.*, No. 12-6796, 2018 WL 1083885, at *5 (E.D. Pa. Feb. 27, 2018).

The third factor requires consideration of where the claim arose. In this case, this factor is neutral as relevant events giving rise to Johnson's claim occurred in both the Eastern District of Pennsylvania and the Western District of Missouri. Specifically, the case in which Johnson's advancement claim arises out of was filed in, and remains pending in, the Western District of Missouri. Johnson made his advancement and indemnification demand on Farm Journal at its corporate headquarters in the Eastern District of Pennsylvania.

The fourth factor—the convenience of the parties—weighs in favor of transfer. Initially, both parties are currently litigating the related Underlying Action in the Western District of Missouri and it would be more convenient for both parties to litigate these actions in one forum. Furthermore, although Johnson opposes transfer of this action, based on his financial position, it would be more convenient for Johnson to litigate both actions in his home forum of Missouri as he "lacks sufficient resources to pay [his] expenses [in the Underlying Action] through to trial," Johnson Decl. ¶ 6, and litigating two separate actions in two different fora is an additional drain on his financial resources. Thus, litigating both actions in the same district would be more convenient for the parties. *Howmedica*, 867 F.3d at 408 (finding parties' convenience weighed in

favor of transfer because it would be "far easier" for an individual defendant with "fewer financial resources" than the corporate plaintiff to litigate in the transferee forum).

The fifth and sixth factors—the convenience of witnesses and the location of books and records—are neutral. The Third Circuit has instructed that witness convenience is a factor "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Similarly, the location of books and records matters only "to the extent that the files could not be produced in the alternative forum." *Id*. The parties have not provided any indication that there are any witnesses who will be unavailable in either forum, or that documents cannot be produced in either forum.

The final private interest factor—practical problems that might make trial easy, expeditious, and inexpensive—weighs in favor of transfer. Because the Underlying Action and the instant action involve the same parties, except for Blue Book, and the same underlying facts, allowing the litigation to proceed in two fora with two different sets of counsel results in duplicative costs for both parties. This would be avoided by transferring this action to the Western District of Missouri. Further, having one judge oversee the Underlying Action and the instant action would expedite and reduce the final cost of adjudication.

As to the public interests, few carry significant weight here. The enforceability of the judgment is neutral, as "it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or the other." *Id.* at 410 (quoting 1 James Moore et al., *Moore's Manual: Federal Practice and Procedure*, § 7.81[3][b] (2017)).

The relative administrative difficulty in the two fora is also largely neutral. While Farm Journal cites statistics showing the caseload per judgeship is less in the Western District of Missouri than in this District, the difference is not significant enough to weigh more than

minimally in favor of transfer. *See* Mot. to Transfer 10 (relying on the 2018 Federal Court Management Statistics from the Administrative Office of the United States Courts to show there are 347 cases per judgeship in this District and 337 cases per judgeship in the Western District of Missouri).

The next two factors—the local interest in deciding local controversies at home and the public policies of the fora—are largely neutral as well. While Pennsylvania has an interest in adjudicating disputes involving resident corporations and the BCL, Missouri also has an interest in providing relief to its citizens and protecting against harms caused the by actions of non-resident corporation conducting in-state business. Neither party identifies any relevant public policy of either forum.

The familiarity of the trial judge with the applicable state law is relevant here, as this is a diversity action; however, this factor bears slightly in favor of transfer. While Farm Journal is a Pennsylvania corporation and the Articles and Bylaws are governed by the BCL, this case principally involves interpreting the Articles and Bylaws—a task that either court is well-prepared to conduct. *See Palagano v. NVIDIA Corp.*, No. 15-1248, 2015 WL 5025469, at *7 (E.D. Pa. Aug. 25, 2015) (observing that although the trial court's familiarity with applicable state law "is a consideration that could tip the balance in an otherwise close call, this factor is of little weight," as "[f]ederal district courts are regularly called upon to interpret the laws of jurisdictions outside of the states in which they sit" (internal quotation marks and citations omitted)).

Finally, the Court must take into account considerations of judicial economy. Judicial economy is best served by transferring the case to the Western District of Missouri. Because the instant case involves the same parties as those involved in the Underlying Action, except for Blue Book, and involves the same facts as those alleged in the Underlying Action, there is a strong

likelihood this case would be consolidated with the Underlying Action. This strong likelihood of consolidation weighs heavily in favor of transfer. *See QVC, Inc. v. Patiomats.com, LLC*, No. 12-3168, 2012 WL 3155471, at *6 (E.D. Pa. Aug. 3, 2012) ("Courts in this District have held that when there is a 'strong likelihood of consolidation with a related action,' transfer of venue is warranted." (quoting *Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*, No. 09–2552, 2009 WL 1845236, at *6 (E.D. Pa. June 26, 2009))).

Furthermore, if Johnson is ultimately successful on his advancement claim, administration of advancement will require court oversight to review the reasonableness of Johnson's requested fees and to adjudicate any additional disputes between the parties. The Western District of Missouri is in a better position to conduct these tasks due to its continuing familiarity with the Underlying Action and parties. Therefore, transferring the case to the Western District of Missouri would further judicial economy and weighs heavily in favor of transfer. *See, e.g.*, *Kurz v. EMAK Worldwide, Inc.*, 464 B.R. 635, 649 (D. Del. 2011) ("Transferring this proceeding to the same venue as the bankruptcy case would provide the most effective and economical use of judicial resources because that court is familiar with both the details of the bankruptcy case and the Advancement Action.").

Although Johnson's choice to file suit in this District carries significant weight in the transfer analysis, several other private and public interests—including the convenience of the parties; the practical considerations making disposition of this case easy, expeditious and inexpensive; judicial economy; and, to a lesser extent, Farm Journal's forum preference—weigh in favor of transfer. After considering all of the relevant private and public interests, the Court is persuaded that, on balance, this action "would more conveniently proceed and the interests of justice be better served" by transfer to the Western District of Missouri. *See QVC, Inc.*, 2012 WL

3155471, at *6 (transferring case where a pending and related action was progressing in the transferee court and noting "the presence of a related action in the transferee forum is such a powerful reason to grant a transfer that courts do so even where other *Jumara* factors, such as the convenience of parties, and witnesses, would suggest the opposite" (citation omitted)). Accordingly, Farm Journal's motion to transfer will be granted.

**CONCLUSION**

For the reasons set forth above, Johnson's motion for a preliminary injunction will be denied and Farm Journal's motion will be granted insofar as the above-captioned case shall be transferred to the Western District of Missouri.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.